BOAZ vs. BOAZ.

[BILL IN EQUITY TO REMOVE HUSBAND AS TRUSTEE OF WIFE'S SEPARATE ESTATE.]

1. *Removal of husband as trustee.*—A deliberate and permanent abandonment of the wife by the husband, without reasonable cause, is sufficient (Code, § 1994) to authorize his removal from the trusteeship of her statutory separate estate.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 1st February, 1858, by Mrs. Jane H. Boaz, suing by her next friend, against her husband, Peter C. Boaz, for the purpose of removing him from the trusteeship of her statutory separate estate. It alleged, that the parties were married, in Dallas county, Alabama, in September, 1854; that the complainant at that time owned and possessed, as her separate estate, personal property to the value of $30,000; that the defendant, soon after the marriage, purchased a valuable tract of land at an administrator's sale, and took the title to himself, though the purchase-money (nearly $12,000) was paid out of the complainant's separate means; that the complainant then filed a bill in chancery

against him, to compel a divestiture of the legal title to this land; that the defendant shortly afterwards abandoned her, "declaring that, as an honorable man, he could not live with her any longer"; that he removed to his own plantation, about four miles distant from the place where he and the complainant had been living, and carried with him an infant daughter, the only child of the marriage, together with a great many articles of household furniture, provisions, and plantation utensils, which had been purchased with the complainant's money; and that he placed an overseer on the plantation where the complainant was left, for the purpose of watching and annoying her. An answer under oath having been waived by the complainant, the defendant's answer was not sworn to. He admitted the marriage as charged, and that the complainant then had about twenty slaves, which went into his possession; that he purchased a tract of land as alleged in the bill, and took the title in his own name, but not that the purchase-money was paid with the complainant's funds. He further admitted that he did abandon the complainant at the time specified in her bill, and then declared to her that, as an honorable man, he could not live with her any longer; but he alleged that his reason for thus acting, as the complainant well knew, was the conviction that she was unfaithful to him; and he detailed some of the circumstances which had forced this conviction on his mind. He admitted, also, that he had carried with him the only child of the marriage, and many articles of personal property; but insisted that he had a right to do so, and that none of the property taken belonged to the complainant; and he denied that he had been guilty of any improper conduct as trustee of the complainant's separate estate.

On final hearing, on pleadings and proof, the chancellor held, that the defendant's charge of infidelity on the part of the complainant was not sustained by the evidence; but that his voluntary abandonment of her, coupled with his false accusation against her chastity, was not sufficient, under the statute, to justify his removal from the office of trustee of her separate estate; and

he therefore dismissed the bill, at the costs of the complainant's next friend.

The chancellor's decree is here assigned as error.

ALEX. & JNO. WHITE, for appellant.—The husband's statutory rights in and to the wife's separate estate present an anomaly in the law. As trustee and husband, he is entitled to manage and control the *corpus* of her property, and to receive the rents, income and profits thereof; not absolutely as his own, because they are not subject to his debts; and yet not simply as trustee, because he is not accountable to his *cestui que trust*. His rights and duties are founded on the two-fold relation of husband and trustee. The rents and profits of the wife's estate are given to him, not for his own benefit, but to enable him to provide for the expenses of the family. The law presumes that the husband and wife live together, and the marriage contract is based upon this presumption. The duties of the husband, as the head of the family, can only be fulfilled while they are thus living together. He cannot properly provide for the wants of the family, when he has dissolved the family relation. He cannot protect and take care of the wife, as by law bound to do, when he has voluntarily abandoned, and is living separate and apart from her. When he has thus abjured all the duties and obligations of the marriage relation, he no longer has the power, even if he had the will, to manage and control the wife's separate estate as the law intended he would; and when his abandonment is caused by an unfounded jealousy, as shown in this case, it is to be presumed that he has not the will, even if he had the ability. A voluntary abandonment of the wife, coupled with a false accusation against her chastity, shows such moral perversion and bad faith on the part of the husband, as renders him unfit to be her trustee.

BYRD & MORGAN, *contra.*—The record contains no evidence impeaching the defendant's capacity or competency to act as trustee of his wife's separate estate. He is shown to be a prudent and discreet manager, and has

Boaz v. Boaz.

been guilty of no misconduct whatever in relation to the wife's property. His voluntary abandonment of the wife, after it has continued three years, will be good cause of divorce in her favor, and thus remove him from the office of trustee. But, until the expiration of that period, he has the *locus penitentiæ*—an opportunity to test the truth of his suspicions. If his suspicions are well founded, the abandonment was justifiable and proper; and if the admissions of the answer are sufficient to establish the fact of abandonment, they ought also to be held sufficient to prove the cause of that abandonment.

A. J. WALKER, C. J.—The pleadings and proofs in this case compel us to decide, that the defendant abandoned the complainant without reasonable cause; that the abandonment was a deliberate act; that it is permanent, and that there is no prospect that the defendant will at any time hereafter admit the complainant into his society as his wife. Upon these facts alone we decide, that the defendant should be removed from the position of trustee for his wife.

The causes prescribed in the statute, for the removal of the husband as the trustee of a wife having a separate estate, are, that from imbecility, intemperance, or some other cause, he is incapable of, or unfit for, the discreet management and control of the separate estate.—Code, §§ 1994, 1995. The unfitness for the management of the separate estate must be defined with reference to the nature of the trust, and to its purposes. The management of a married woman's separate estate, which the law contemplated, does not have relation alone to the control of the property; but it has relation also to the purposes to be subserved by the trust. It is true this court has held, that by virtue of the husband's exemption from accountability for the rents, income and profits of the separate estate, he is clothed with a right to such rents, income and profits while he remains trustee, even including the crop ungathered at the wife's death.—Weems v. Bryan and Wife, 21 Ala. 302; Manning v. Manning, 24 *ib.* 386; Whitman v. Abernathy, 32 *ib.* 154; Bennett v. Bennett,

34 Ala. 53. But, in bestowing this right upon the husband, the law does not consult his interest alone. That it does not, is shown by the fact, that on account of imbecility, which may arise from no fault, and may increase his wants, he is liable to be deprived of the rents, income and profits, as a consequence of his removal as trustee. It is also shown by the fact, that the rents, income and profits are not subject to the payment of the husband's debts. The legislature, in making the exemption from liability for the husband's debts, certainly did not look alone to his benefit. It would be a strange anomaly in legislation, if the husband has been clothed with a right to the entire income of the wife's property, exempt from liability to his debts, for no purpose beyond the bestowment of a peculiar boon upon him. But, furthermore, the peculiar language of the statute is indicative of an ulterior purpose. It first declares, that the property is the wife's separate estate; it then vests it in the husband *as a trustee*, and proceeds to declare, not that the income belongs to the husband, but that he shall not be required to account for it. The husband, therefore, holds the property as trustee, and is entitled to the income, merely because he is not required to account for it as trustee. It is a fair inference from these provisions, that the husband is not vested with a title in his own right, for any space of time, to the wife's separate estate; that the law has permitted him to receive the income, with the purpose that he might, as the head of the family, have the means of maintaining that family, and has made it free from liability to debts, in order that his misfortunes or thriftlessness should not prevent the accomplishment of the purpose. This view of the purpose of the legislature is strengthened by the section which makes the *corpus* of the property liable for articles of comfort and support of the household. This section, in allowing the *corpus* of the property to be sold for the support of the family, and the income to the husband to be thus entirely cut off, clearly makes the husband's right subordinate to the great purpose of providing a maintenance for the family.

It is true, the statute has not, in terms, declared the purpose of relieving the husband from liability to account for the rents and profits, and has provided no specific mode of compelling the husband to respect that purpose in appropriating the income. From the nature of the thing, such an obligation must be left to be enforced by the sense of conjugal and parental duty and affection. The law has aimed to place in the hands of the husband, whose wife has a separate estate, the means of maintaining the family, and has freed him from all restraint, and left him untrammeled to exercise his authority and discretion as the head of the family, by saying that he shall not be questioned in law as to those means. The only guaranty, besides the affection of the husband and father, that the husband will make a proper disposition of the income, is found in the remedy which the law gives against the husband, and against the *corpus* of the separate estate, for necessaries supplied to the family.

As the income is given to the husband in order that he may out of it support the wife and children, exercising the discretion and authority which pertains to the head of the family; and as the income is placed in his hands as trustee for that purpose, he becomes an unfit instrument for the accomplishment of that purpose, when, without adequate cause, he separates himself from his wife, ceases to be to her a husband, and becomes to her a perpetual alien and stranger. The husband who has permanently abandoned his wife, and has a fixed and unrelenting purpose to subject her to perpetual exclusion from his society, is not fit to receive the income of her separate estate, in order that he may, as her husband, with the discretion and authority of a husband,—an authority tempered and guided by affection,—maintain her and her children. How can he, separated from her, not abiding upon the same premises, not seeing her, or communicating with her, know her wants and prudently meet them?

The husband, in his capacity of trustee, is also charged with the duty of joining with his wife in the sale and conveyance of the property of the separate estate. The

law designed that there should be a union of the judgments of the two in the acts of selling and conveying the property. In the attitude which the husband has assumed towards the wife, it is impossible that this purpose of the law can be carried out. It may be that the interest of the separate estate may require that many articles should be sold; but how could the consultation, the union of purpose, and concert of action, contemplated by the statute, be secured in such a case?

Furthermore, the husband has the discretionary authority to use the proceeds of the sale of the wife's separate estate in such manner as is most beneficial for the wife. The husband, in this case, is not fit to judge what would be most beneficial to his wife. He can not know her wants, and, if he did, his complete alienation from her has unfitted him for the exercise of such a guardianship over her.

An examination of the previous decisions of this court, in reference to the removal of the husband as trustee, will show that the precise point of this case has not been heretofore decided; yet the tendency of the decisions is to the conclusion which we have attained in this case. Smyth v. Oliver, 31 Ala. 39; Fisk v. Stubbs, 30 Ala. 335; Andrews v. Andrews, 28 *ib.* 432; Bryan v. Bryan, 35 *ib.* 290.

The decree of the chancellor is reversed, and the cause remanded, for further proceedings pursuant to the foregoing opinion.